IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

RAMONE TAYLOR,           :
    Plaintiff,           :
                         :
    v.                   :      CIVIL ACTION NO. 26-CV-0164
                         :
LISA ROYAL, *et al.*,    :
    Defendants.          :

## MEMORANDUM

**WEILHEIMER, J.**                                    APRIL 16 , 2026

Currently before the Court is the Amended Complaint (ECF No. 9) filed by *pro se* Plaintiff Ramone Taylor alleging various federal and state law claims related to a state court ejectment action.[1] For the following reasons, the Court will dismiss Taylor's claims and close this case.

## I.    FACTUAL ALLEGATIONS AND PROCEDURAL HISTORY[2]

Taylor commenced this matter in January 2026, naming as Defendants: Lisa Royal, landlord; Royal Consultants, LLC and Royal Managed Property LLC, identified as "landlord/property entities"; Jermaine Harris, Esq., "landlord's counsel"; Law Office of Jermaine Harris; Zachary Perlick, Esq., identified as "Plaintiff's retained counsel"; Law Office of Zachary Perlick; Bart E. Levy, Esq.; Levy Law, P.C.; Semile Robinson, Detective with the Civil

---

[1] The initial Complaint also included Alexis McDade as a Plaintiff. (*See* ECF No. 2 at 1, 2.) However, McDade was dismissed as a party to this matter in a March 10, 2026 Memorandum and Order because she did not pay the necessary fees or submit an application to proceed *in forma pauperis*, and she did not sign the Complaint. (*See* ECF Nos. 7, 8.)

[2] Unless otherwise indicated, the facts set forth in this Memorandum are taken from Taylor's Amended Complaint and publicly available dockets, *see Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (stating courts may consider "matters of public record" in determining whether a pleading has stated a claim). The Court adopts the sequential pagination supplied by the CM/ECF docketing system.

Enforcement Unit of the Philadelphia Sheriff's Department; the Philadelphia Sheriff's Department; and the City of Philadelphia. (Compl. at 1, 3.) In the initial Complaint, Taylor represented that he is a resident of Philadelphia, although he listed a Drexel Hill, Pennsylvania address for himself. (*Id.* at 2.)

Taylor alleged violations of his rights under the Americans with Disabilities Act of 1990, 42 U.S.C. § 12131, *et seq.* ("ADA") and the Fair Housing Act, 42 U.S.C. § 3601, *et seq.* ("FHA"), as well as the United States Constitution. He also sought to present state law claims. Taylor stated that he is legally blind and suffers from chronic PTSD which requires ongoing medical care. (Compl. at 1.) He alleged "Defendants pursued eviction despite unlicensed and uninhabitable conditions." (*Id.* at 2.) He further claimed that he was "forcibly removed during a lockout without a judge-signed order" on January 6, 2026. (*Id.*) According to Taylor, Defendant Robinson "personally participated in or supervised the civil enforcement action." (*Id.*) Taylor also contended that he "repeatedly requested [unspecified] medical and disability accommodation, which was denied." (*Id.*) Taylor sought monetary damages, as well as unspecified injunctive relief. (*Id.*)

A review of the publicly available state court docketing system revealed that Royal Consulting, LLC filed a civil ejectment action against Taylor and McDade on October 21, 2024 in the Court of Common Pleas for Philadelphia County regarding 5436 Chestnut Street, Apt. A, Philadelphia, Pennsylvania. *See Royal Consulting, LLC v. Taylor,* No. 241002740 (C.P. Philadelphia). Judgment was entered in favor of Royal Consulting, LLC and against Defendants Taylor and McDade by stipulation of the parties on June 25, 2025. *Id.* A writ of possession was issued on that date as well, although Taylor subsequently sought a stay. *Id.* The writ of possession was re-issued on September 28, 2025, and again on December 23, 2025. *Id.* Taylor

2

filed subsequent motions seeking to set aside or delay the ejectment, which were denied by Order entered January 7, 2026. *Id.* Taylor appealed that decision to the Pennsylvania Superior Court. *See Royal Consulting, LLC v. Taylor*, 432 EDA 2026 (Pa. Super. Ct.).[3] Taylor also filed additional motions in the Court of Common Pleas, one of which remains pending. *See Royal Consulting, LLC v. Taylor,* No. 241002740 (C.P. Philadelphia).

In a March 10, 2026 Memorandum and Order, the Court screened the Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B) and dismissed Taylor's claims. (ECF Nos. 7 and 8; *Taylor v. Royal*, No. 26-0164, 2026 WL 674260 (E.D. Pa. Mar. 10, 2026).) As discussed more fully in the Memorandum, the ADA and FHA claims were dismissed without prejudice as not plausible pursuant to § 1915(e)(2)(B)(ii). *See Taylor*, 2026 WL 674260, at *3-4. All constitutional claims brought pursuant to 42 U.S.C. § 1983 against the Philadelphia Sheriff's Department were dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), while all other § 1983 claims were dismissed without prejudice. *See id.* at *5-6. Additionally, all state law claims were dismissed without prejudice for lack of subject matter jurisdiction. *See id.* at *6. The Court explained that Taylor failed to sufficiently describe the circumstances and events that occurred and instructed Taylor that conclusory allegations do not meet the pleading standard. *See id.* at *3, *4, *5. Taylor was given thirty-days leave to file an amended complaint as to the claims that were dismissed without prejudice. (*See* ECF No. 8.)

On April 6, 2026, Taylor filed the Amended Complaint that is presently before the Court. (ECF No. 9 ("Am. Compl.").) In the Amended Complaint, Taylor names the same Defendants as identified in the initial Complaint, with the exception of the Philadelphia Sheriff's Department

---

[3] The appeal was quashed *sua sponte* by the Superior Court on April 10, 2026, because final judgment by agreement of the parties was entered on June 25, 2025, and no appeal was filed therefrom. *See Royal Consulting, LLC v. Taylor*, 432 EDA 2026 (Pa. Super. Ct.).

which is not named. (*See id.* at 1.) He represents that he is legally blind and suffers from progressive corneal deterioration, as well as severe PTSD. (*Id.*) He relies upon a live-in caregiver to assist with reading and daily tasks. (*Id.*)

Taylor alleges that he entered into a residential lease with a term ending October 27, 2024. (*Id.* at 2.) Taylor identifies Lisa Royal as the owner of the residential property, and Royal Consultants LLC and Royal Management Property LLC as managers of the property. (*Id.* at 1.) Taylor contends that "Defendants" filed an ejectment action on October 20, 2024, before the expiration of the lease and that he was a lawful tenant at that time. (*Id.* at 2.) Taylor states that Jermaine Harris acted as legal counsel for the landlord Defendants, Zachary Perlick represented Taylor during portions of the litigation, and "Bart Levy appeared without substitution of counsel." (*Id.* at 1.) Taylor asserts that he is unable to independently read legal documents, he "required accommodations to understand proceedings," he "relied on legal counsel to protect his rights," and that "[u]nauthorized stipulations and misrepresentations impaired [his] defense." (*Id.*) Taylor also states that "[o]n October 29, 2025, the court ordered no eviction prior to January 1, 2026" and a writ of possession was issued on December 24, 2025. (*Id.* at 2.) He alleges that Defendant Robinson executed the writ on January 6, 2026, and Taylor was removed from the residence, became homeless, lost property, and suffered medical disruption. (*Id.*)

According to Taylor, "Royal," whom the Court understands to refer to Lisa Royal, initiated the ejectment action prematurely and the "Property entities managed and participated in eviction decisions." (*Id.*) He contends that Harris prosecuted the litigation despite "lease status." (*Id.*) As to counsel who represented Taylor in the state court proceedings, Taylor alleges that Perlick entered into a stipulation without authorization and failed to withdraw properly, and that Levy "appeared without substitution and misrepresented consent." (*Id.*) He

4

further alleges that the "City maintained policies and failed to properly train and supervise." (*Id.*)  Additionally, Taylor contends that Defendants Royal, Harris, Perlick, and Levy "acted jointly and in concert with Defendant Robinson . . . to effectuate [his] removal." (*Id.*)  Taylor reiterates as follows:

> The conduct of Defendants Lisa Royal, Jermaine Harris, Zachary Perlick, and Bart Levy demonstrates a pattern of actions that deprived Plaintiff of fair legal process and the ability to protect his housing rights.  Royal initiated ejectment proceedings despite the existence of an active lease. Harris prosecuted the litigation while characterizing Plaintiff as a trespasser despite circumstances indicating a landlord-tenant relationship. Perlick entered a stipulation without Plaintiff's authorization and failed to properly withdraw as counsel of record, while Levy appeared in court without substitution counsel and represented that Plaintiff had agreed to stipulations which Plaintiff expressly did not consent to.  These actions collectively impaired Plaintiff's ability to defend himself in the litigation and contributed to the events that ultimately resulted in the loss of Plaintiff's housing and property.

(*Id.* at 2-3.)  Based on his allegations, Taylor seeks monetary damages.  (*Id.* at 3.)

## II.    STANDARD OF REVIEW

Because Taylor has been granted *in forma pauperis* status, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to screen the Amended Complaint and dismiss it if it fails to state a claim. The Court must determine whether the Amended Complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 566 (2007)); *Talley v. Wetzel*, 15 F.4th 275, 286 n.7 (3d Cir. 2021).  At the screening stage, the Court will accept the facts alleged in the *pro se* Complaint as true, draw all reasonable inferences in the plaintiff's favor, and ask only whether that complaint, liberally construed, contains facts sufficient to state a plausible claim.  *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024).

As Taylor is proceeding *pro se*, the Court construes his allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)). However, conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678; *see also Martinez v. UPMC Susquehanna*, 986 F.3d 261, 266 (3d Cir. 2021) ("A plaintiff cannot survive dismissal just by alleging the conclusion to an ultimate legal issue."). "[P]ro se litigants still must allege sufficient facts in their complaints to support a claim." *Vogt*, 8 F.4th at 185 (quoting *Mala*, 704 F.3d at 245). An unrepresented litigant "cannot flout procedural rules — they must abide by the same rules that apply to all other litigants." *Id.*; *see also Doe v. Allegheny Cnty. Hous. Auth.*, No. 23-1105, 2024 WL 379959, at *3 (3d Cir. Feb. 1, 2024) ("While a court must liberally construe the allegations and 'apply the applicable law, irrespective of whether the pro se litigant mentioned it b[y] name,' *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002), this does not require the court to act as an advocate to identify any possible claim that the facts alleged could potentially support.").

Additionally, the Court must review the Amended Complaint and dismiss the matter if it determines that subject matter jurisdiction is lacking. *See* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."); *Grp. Against Smog and Pollution, Inc. v. Shenango, Inc.*, 810 F.3d 116, 122 n.6 (3d Cir. 2016) (explaining that "an objection to subject matter jurisdiction may be raised at any time [and] a court may raise jurisdictional issues *sua sponte*").

## III.    DISCUSSION

Taylor again alleges violations of his rights under, *inter alia*, the FHA, the ADA, and the United States Constitution. (*See* Am. Compl. at 3.) He also seeks to present civil conspiracy and

state law malpractice claims. (*Id.*) Even under a liberal reading of the Amended Complaint, however, Taylor has failed to allege a claim that passes statutory screening.

### A.    Federal Law Claims

### 1.    FHA Claims

As the Court previously explained to Taylor, *see Taylor*, 2026 WL 674260, at *4, the FHA prohibits discrimination on the basis of race, color, religion, sex, familial status, or national origin, in a variety of real estate-related transactions, *see* 42 U.S.C. § 3604. Additionally, the FHA has been extended to protect against discrimination on the basis of disability. *Revock v. Cowpet Bay W. Condo. Ass'n*, 853 F.3d 96, 104 (3d Cir. 2017) (citing *City of Edmonds v. Oxford House, Inc.*, 514 U.S. 725, 728 n.1 (1995); Fair Housing Amendments Act of 1988, Pub. L. No. 100-430, 102 Stat. 1619 (1988) ("FHAA"). The FHAA makes it unlawful "[t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap of that person." 42 U.S.C. § 3604(f)(2)(A).[4] Discrimination under the FHA, as amended, includes, *inter alia*, "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(B).[5]

---

[4] "Under the FHAA, 'handicap' means 'a physical or mental impairment which substantially limits one or more of [a] person's major life activities.'" *431 E. Palisade Ave. Real Estate, LLC v. City of Englewood*, 977 F.3d 277, 284 (3d Cir. 2020) (quoting 42 U.S.C. § 3602(h)(1)) (alteration in original).

[5] "To determine whether an accommodation is 'reasonable,' . . . [a court must] consider whether the requested accommodation is (1) reasonable and (2) necessary to (3) afford handicapped persons an equal opportunity to use and enjoy housing." *Revock*, 853 F.3d at 110 (quoting *Lapid-Laurel, L.L.C. v. Zoning Bd. of Adjustment of the Twp. of Scotch Plains*, 284 F.3d 442, 457 (3d Cir. 2002)). "Necessary suggests something that cannot be done without, and thus is treated as requiring a causal link that examines whether the accommodation sought will

The Amended Complaint fails to present a plausible claim of discrimination under the FHA. Taylor alleges that he entered into a residential lease with a term ending on October 27, 2024, and that "Defendants" filed an ejectment action on October 20, 2024, prior to the expiration of the term. (Am. Compl. at 2.) He contends that Lisa Royal and Jermaine Harris, along with Taylor's counsel Perlick and Levey acted to deprive him of legal process and the ability to protect his housing rights. (*Id.*) Taylor reiterates that Royal initiated the ejectment action despite the existence of an active lease. (*Id.* at 3.) These allegations do not plausibly allege that Taylor suffered discrimination in housing on the basis of his disability, or that any Defendant failed to reasonably accommodate his disability. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Once again, Taylor simply has not alleged facts that allow the Court to draw the reasonable inference that any Defendant violated the FHA. Accordingly, Taylor's FHA claims will be dismissed.

### 2.    ADA Claims

Taylor asserts that he is legally blind and unable to independently read legal documents and that he "required accommodations to understand proceedings." (Am. Compl. at 2.) In Count II, Taylor states that he "was denied meaningful access to legal proceedings due to

---

redress injuries that otherwise would have prevented disabled individuals from the same enjoyment or access to the property as non-disabled persons." *Schueller v. Pennypack Woods Home Ownership Assoc.*, No. 19-178, 2021 WL 7285246, at *4 (E.D. Pa. Dec. 22, 2021) (quotation marks and citations omitted). "Whether there has been a 'refusal' to provide a reasonable accommodation under the Fair Housing Act depends on the circumstances." *Revock*, 853 F.3d at 110.

inability to read and understand documents without accommodation." (*Id.* at 3.) Taylor does not indicate the Defendant or Defendants against whom he seeks to present this claim, and he again does not state which title or section of the ADA he believes was violated. (*See id.*) Liberally construing the Amended Complaint, the Court understands Taylor to assert a claim under Title II of the ADA,[6] which provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. This provision provides a cause of action for disabled individuals claiming that they were denied access to state courts because of their disabilities. *Lane*, 541 U.S. at 533-34 ("[W]e conclude that Title II, as it applies to the class of cases implicating the fundamental right of access to the courts, constitutes a valid exercise of Congress' § 5 authority to enforce the

---

[6] Taylor also includes a passing reference to the "Rehabilitation Act" as Count III, although he offers no specific allegations in support thereof. (*See* Am. Compl. at 3.) "Functionally, the ADA and the RA impose the 'same prohibition,' but they cover different entities." *Montanez v. Price*, 154 F.4th 127, 144 (3d Cir. 2025) (quoting *Fry v. Napoleon Cmty. Schs.*, 580 U.S. 154, 159 (2017)), *petition for cert. filed*, 94 U.S.L.W. 3289 (U.S. Mar. 11, 2026) (No. 25-1073). "Along with proscribing discriminatory animus, both statutes also impose on covered entities an affirmative obligation to make 'reasonable accommodations' for persons with disabilities so that they can meaningfully access their programs, services, and activities." *Id.* (citing *Alexander v. Choate*, 469 U.S. 287, 301 (1985); *Tennessee v. Lane*, 541 U.S. 509, 532-33 (2004)). "[W]hen a plaintiff sues under both the RA and the ADA, [courts] often address both claims in the same breath, construing the provisions of both statutes in light of their close similarity of language and purpose," since "the scope of protection afforded under both statutes, i.e., the general prohibition against discrimination, is materially the same." *Berardelli v. Allied Servs. Inst. of Rehab. Med.*, 900 F.3d 104, 117 (3d Cir. 2018) (cleaned up) (citations and quotation marks omitted). Although the substantive standards for determining liability under the RA and the ADA are the same, *see Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 275 (3d Cir. 2014), a party who seeks to proceed under § 504 of the RA "must show that the allegedly discriminating entity receives federal funding." *McDonald-Witherspoon v. City of Philadelphia*, 481 F. Supp. 3d 424, 439 (E.D. Pa. 2020) (citing *CG v. Pa. Dep't of Educ.*, 734 F.3d 229, 235 n.10 (3d Cir. 2013)), *aff'd*, No. 21-1019, 2021 WL 6101246 (3d Cir. Dec. 21, 2021).

guarantees of the Fourteenth Amendment."); *Kennedy v. N.J. Ct. Sys.*, No. 24-2826, 2026 WL 323878, at *3 (3d Cir. Feb. 6, 2026) (*per curiam*) (same).

As the Court previously explained to Taylor, to state a claim under Title II of the ADA, Taylor must allege that: "(1) he is a qualified individual; (2) with a disability; (3) who was excluded from participation in or denied the benefits of the services, programs, or activities of a public entity, or was subjected to discrimination by any such entity; (4) by reason of his disability." *See Taylor*, 2026 WL 674260, at *3-4 (quoting *Geness v. Cox*, 902 F.3d 344, 361 (3d Cir. 2018) (quoting *Haberle v. Troxell*, 885 F.3d 170, 178-79 (3d Cir. 2018))). Title II of the ADA includes within its prohibition against discrimination the failure to make "reasonable accommodations." *See Haberle*, 885 F.3d at 180.

Assuming *arguendo* that Taylor is a qualified individual with a disability, and putting aside whether Taylor has named an appropriate defendant, Taylor's allegations do not support an inference that he was excluded from participating in judicial proceedings or denied access to the Pennsylvania courts. As the publicly available state court docket demonstrates, Taylor, who was represented by counsel, filed numerous motions, petitions, and appeals in his state court case and had his arguments addressed by the trial and appellate courts. *See Royal Consulting, LLC v. Taylor,* No. 241002740 (C.P. Philadelphia); *see also Bedford v. Michigan*, 722 F. App'x 515, 520 (6th Cir. 2018) (affirming dismissal of ADA Title II claim where the *pro se* plaintiff participated in the proceedings, filed motions, and attended hearings); *McCauley v. Georgia*, 466 F. App'x 832, 837 (11th Cir. 2012) (*per curiam*) (affirming dismissal of ADA Title II claim where the *pro se* plaintiff "was able to access the court and have her case heard on the merits" after filing motions that were ultimately denied). Further, Taylor has not plausibly alleged that he was denied any accommodation on the basis of his disability. *See Kennedy*, 2026 WL

10

323878, at *3 (affirming dismissal of Title II claim as conclusory where plaintiff alleged she was denied access to the courts because courts "made it too difficult to access" and plaintiff failed to allege that she was denied assistance *on the basis of* her disability (emphasis added)).  The fact that Taylor was subject to ejectment does not equate to an ADA claim.[7]

"Although the plausibility standard does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation marks and citations omitted).  "A complaint that pleads facts merely consistent with a defendant's liability stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (cleaned up); *see also Falcone v. Dickstein*, 92 F.4th 193, 202 (3d Cir. 2024) (reviewing court will "disregard unsupported conclusions or legal conclusions couched as factual allegations" when determining whether dismissal was proper for failure to state a claim).  Accordingly, Taylor's ADA and RA claims will be dismissed.

### 3.    Section 1983 Claims

As the Court previously explained to Taylor in the March 10 Memorandum, the vehicle by which federal constitutional claims may be brought in federal court is 42 U.S.C. § 1983.  *See Taylor*, 2026 WL 674260 at *5-6.  "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that

---

[7] Because Taylor seeks compensatory damages, he must also plead that he suffered intentional discrimination under a deliberate indifference standard.  *See Haberle*, 885 F.3d at 181 (citations omitted).  A plaintiff may meet that standard in two ways: "first, by alleging facts suggesting that the existing policies caused a failure to adequately respond to a pattern of past occurrences of injuries like the plaintiffs, or, second, by alleging facts indicating that she could prove that the risk of cognizable harm was so great and so obvious that the risk and the failure to respond will alone support finding deliberate indifference." *Id.* (cleaned up).  Taylor has not alleged facts to support that he suffered any denial, much less one that amounted to intentional discrimination under a deliberate indifference standard.

the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).  Local governments and municipalities are considered persons under § 1983.  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978).  However, municipal liability cannot be predicated on a *respondeat superior* basis, meaning that municipalities may not be held liable simply because their employees committed a constitutional violation.  *Id.* at 691.  Rather, "under § 1983, local governments are responsible only for 'their *own* illegal acts.'"  *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986)).  Additionally, the personal involvement of each defendant in the alleged constitutional violation is a required element, meaning a plaintiff must allege how each defendant was involved in the events and occurrences giving rise to the claims brought against that defendant.  *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998); *see also Iqbal*, 556 U.S. at 676 ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").

In Count IV of the Amended Complaint, Taylor claims that his Fourth Amendment rights were violated because execution of the writ constituted an unlawful seizure without valid legal basis.  (Am. Compl. at 3.)  He further alleges that "Defendants deprived [him] of procedural and substantive due process."  (*Id.*)  To the extent Taylor seeks to bring a Fourth Amended illegal seizure or a Fourteenth Amendment due process claim against Defendant Robinson, he has failed to allege a plausible basis for a claim.  Taylor merely alleges that a writ of possession was issued on December 24, 2025, Robinson executed the writ on January 6, 2026, and there was no basis for the execution of the writ.  (*See id.* at 2, 3.)  Taylor again fails to provide sufficient facts in support of his contention that Defendant Robinson violated his constitutional rights.  Taylor's

allegations against Defendant Robinson simply lack sufficient factual support that he violated Taylor's rights under either the Fourth Amendment or the Fourteenth Amendment.

Additionally, because the ejectment was ordered by the state court, Robinson is entitled to quasi-judicial immunity on Taylor's civil rights claims. *See Barel v. Off. of Clerk of Superior Ct. of N.J.*, 834 F. App'x 763, 765 (3d Cir. 2020) (*per curiam*) (holding that a sheriff executing a court order enjoys quasi-judicial immunity (citing *Russell v. Richardson*, 905 F.3d 239, 250 (3d Cir. 2018) (quasi-judicial immunity covers acts authorized by court order)); *Roland v. Phillips*, 19 F.3d 552, 556 (11th Cir. 1994) (quasi-judicial immunity protects law enforcement officials executing facially valid court orders))). Even if the order was unlawful, as Taylor appears to contend, Robinson was entitled to rely on the facially valid state court order.

Taylor also attempts to once again assert municipal liability against the City, alleging that "[c]ity policies, customs, and failure to train caused constitutional violations." (Am. Compl. at 3.) As the Court previously explained to Taylor in the March 10 Memorandum, *see Taylor*, 2026 WL 674260, at *5-6, to state a claim for municipal liability, a plaintiff must allege that the defendant's policies or customs caused the alleged constitutional violation, *see Monell*, 436 U.S. at 694; *see also Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 583-84 (3d Cir. 2003). To satisfy the pleading standard, the plaintiff "must identify [the] custom or policy, and specify what exactly that custom or policy was," *McTernan v. City of York*, 564 F.3d 636, 658 (3d Cir. 2009), and "must also allege that the policy or custom was the 'proximate cause' of his injuries," *Est. of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (citing *Kneipp v. Tedder*, 95 F.3d 1199, 1213 (3d Cir. 1996)).[8] Taylor fails to allege a plausible *Monell* violation as he does not

---

[8] A plaintiff may also state a basis for *Monell* municipal liability by "alleging failure-to-supervise, train, or discipline . . . [and alleging facts showing] that said failure amounts to deliberate indifference to the constitutional rights of those affected." *Forrest v. Parry*, 930 F.3d

13

identify any City custom or policy that was the proximate cause of his injuries.  Further, "[i]t is well-settled that, if there is no violation in the first place, there can be no derivative municipal claim." *Mulholland v. Gov't Cnty. of Berks, Pa.*, 706 F.3d 227, 238 n.15 (3d Cir. 2013).  Taylor's *Monell* claim against the City will be dismissed because there is no underlying constitutional violation, and in any event, it is not plausible as pled.

Furthermore, Taylor has not plausibly alleged that any Defendants conspired to violate his civil rights.  He claims that "Defendants Royal, Harris, Perlick, and Levy acted jointly and in concert with Defendant Robinson, a state actor, to effectual [his] removal" and that "[t]hrough coordinated use of judicial process and sheriff enforcement, Defendants acted under color of state law." (Am. Compl. at 2.)  Taylor further alleges that the actions of Defendants Lisa Royal, Harris, Perlick, and Levy collectively impaired his ability to defend himself in the litigation and

---

93, 106 (3d Cir. 2019).  "This consists of a showing as to whether (1) municipal policymakers know that employees will confront a particular situation, (2) the situation involves a difficult choice or a history of employees mishandling, and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." *Id.*  As the United States Court of Appeals for the Third Circuit stated:

> If the alleged policy or custom at issue is a failure to train or supervise . . . , the plaintiff must show that this failure "amounts to 'deliberate indifference' to the rights of persons with whom [the municipality's] employees will come into contact." [*Thomas v. Cumberland County*, 749 F.3d 217, 222 (3d Cir. 2014)] (quoting *Carter v. City of Philadelphia*, 181 F.3d 339, 357 (3d Cir. 1999)). "Ordinarily," this requires a plaintiff to identify a "'pattern of similar constitutional violations by untrained employees'" that "puts municipal decisionmakers on notice that a new program is necessary. . . ." *Id.* at 223 (quoting *Connick v. Thompson*, 563 U.S. 51, 62 (2011)).  Otherwise, the plaintiff needs to show that failure to provide the identified training would "likely . . . result in the violation of constitutional rights"—i.e., to show that "the need for more or different training [was] so obvious." *City of Canton v. Harris*, 489 U.S. 378, 390 (1989).

*Johnson v. City of Philadelphia*, 975 F.3d 394, 403 (3d Cir. 2020).

contributed to the events that ultimately resulted in the loss of his housing and property. (*Id.* at 2-3.)

The elements of a § 1983 claim of conspiracy to violate federal civil rights are that "(1) two or more persons conspire to deprive any person of constitutional rights; (2) one or more of the conspirators performs any overt act in furtherance of the conspiracy; and (3) that overt act injures the plaintiff in his person or property or deprives the plaintiff of any right or privilege of a citizen of the United States, with the added gloss under § 1983 that the conspirators act under the color of state law." *Jutrowski v. Township of Riverdale*, 904 F.3d 280, 294 n.15 (3d Cir. 2018) (cleaned up) (quoting *Barnes Foundation v. Township of Lower Merion*, 242 F.3d 151, 162 (3d Cir. 2001)). "[T]o properly plead an unconstitutional conspiracy, a plaintiff must assert facts from which a conspiratorial agreement can be inferred." *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 178 (3d Cir. 2010) (citations omitted). "[A] bare assertion of conspiracy will not suffice." *Twombly*, 550 U.S. at 556. Taylor's allegations that the actions of Defendants Royal, Harris, Perlick, Levy, and Robinson to effectuate the ejectment does not support a plausible allegation of a conspiratorial agreement amongst these, or any other, Defendants. Accordingly, all § 1983 claims will be dismissed with prejudice because Taylor has not alleged a plausible basis for a § 1983 claim against any named Defendant.

### B.     State Law Claims

Taylor also seeks to assert state law legal malpractice claims against Defendants Perlick and Levy. (*See* Am. Compl. at 1-3.) Taylor alleges that Defendant Perlick entered into a stipulation without authorization and failed to withdraw properly and that Defendant Levy "appeared without substitution and misrepresented consent." (*Id.* at 2.) The only independent basis for jurisdiction over any such claims is 28 U.S.C. § 1332(a), which grants a district court

jurisdiction over a case in which "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States."[9]

Section 1332(a) requires "'complete diversity between all plaintiffs and all defendants,'" which "means that, unless there is some other basis for jurisdiction, no plaintiff may be a citizen of the same state as any defendant." *Lincoln Benefit Life Co. v. AEI Life, LLC*, 800 F.3d 99, 104 (3d Cir. 2015) (cleaned up). An individual is a citizen of the state where he is domiciled, meaning the state where he is physically present and intends to remain. *See Washington v. Hovensa*, LLC, 652 F.3d 340, 344 (3d Cir. 2011). It is the plaintiff's burden to establish diversity of citizenship. *Gibbs v. Buck*, 307 U.S. 66, 72 (1939); *see also Quaker State Dyeing & Finishing Co., Inc. v. ITT Terryphone Corp.*, 461 F.2d 1140, 1143 (3d Cir. 1972) (stating that, in diversity cases, the plaintiff must demonstrate complete diversity between the parties and that the amount in controversy requirement has been met).

Taylor has not met his burden. Because Taylor represents that he is a resident of Philadelphia, Pennsylvania, and at least some of the Defendants are citizens of Pennsylvania, diversity jurisdiction does not exist over any state law claims. Accordingly, all state law claims will be dismissed for lack of subject matter jurisdiction. The dismissal will be without prejudice to Taylor refiling his claims in state court, where federal jurisdiction will not be an issue.[10] *See N.J. Physicians, Inc. v. President of U.S.*, 653 F.3d 234, 241 n.8 (3d Cir. 2011) (explaining that

---

[9] Because the Court has dismissed Taylor's federal claims, it will not exercise supplemental jurisdiction over any state law claims.

[10] The Court expresses no opinion on the merits of any state law claims.

dismissals for lack of subject matter jurisdiction are "by definition without prejudice" (citation omitted)).

## IV.    CONCLUSION

For the foregoing reasons, all federal law claims will be dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim and all state law claims will be dismissed without prejudice for lack of subject matter jurisdiction.  As Taylor has already been given an opportunity to cure the defects in his federal law claims and has been unable to do so, the Court concludes that further amendment would be futile.  *See Jones v. Unknown D.O.C. Bus Driver & Transp. Crew*, 944 F.3d 478, 483 (3d Cir. 2019) (amendment by *pro se* litigant would be futile when litigant "already had two chances to tell his story"); *Krantz v. Prudential Invs. Fund Mgmt. LLC*, 305 F.3d 140, 144 (3d Cir. 2002) (*per curiam*) ("A District Court has discretion to deny a plaintiff leave to amend where the plaintiff was put on notice as to the deficiencies in his complaint, but chose not to resolve them." (citation omitted)).

An Order follows, which dismisses this case and which shall be entered separately in accordance with Federal Rule of Civil Procedure 58.

BY THE COURT:

_____

GAIL A. WEILHEIMER, J.

17